## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>    v.<br><br>WESTINGHOUSE AIR BRAKE<br>TECHNOLOGIES CORP.,<br><br>FAIVELEY TRANSPORT S.A.,<br><br>and<br><br>FAIVELEY TRANSPORT NORTH AMERICA,<br><br>                Defendants. | Civil Action No. 1:16-cv-02147<br><br>Judge: Tanya S. Chutkan |

## FINAL JUDGMENT

WHEREAS, Plaintiff, United States of America, filed its Complaint on October 26, 2016, the United States and defendants, Westinghouse Air Brake Technologies Corp., Faiveley Transport S.A., and Faiveley Transport North America, by their respective attorneys, have consented to the entry of this Final Judgment without trial or adjudication of any issue of fact or law, and without this Final Judgment constituting any evidence against or admission by any party regarding any issue of fact or law;

AND WHEREAS, defendants agree to be bound by the provisions of this Final Judgment pending its approval by the Court;

AND WHEREAS, the essence of this Final Judgment is the prompt and certain divestiture of certain rights and assets by the defendants to assure that competition is not substantially lessened;

AND WHEREAS, the United States requires defendants to make a certain divestiture for the purpose of remedying the loss of competition alleged in the Complaint;

AND WHEREAS, defendants have represented to the United States that the divestiture required below can and will be made and that defendants will later raise no claim of hardship or difficulty as grounds for asking the Court to modify any of the divestiture provisions contained below;

NOW THEREFORE, before any testimony is taken, without trial or adjudication of any issue of fact or law, and upon consent of the parties, it is ORDERED, ADJUDGED AND DECREED:

## I. JURISDICTION

This Court has jurisdiction over the subject matter of and each of the parties to this action. The Complaint states a claim upon which relief may be granted against defendants under Section 7 of the Clayton Act, as amended (15 U.S.C. § 18).

## II. DEFINITIONS

As used in this Final Judgment:

A.      "Acquirer" means Amsted Rail Company, Inc., or another entity to which defendants divest the Divestiture Assets.

B.      "Wabtec" means defendant Westinghouse Air Brake Technologies Corp., a Delaware corporation with its headquarters in Wilmerding, Pennsylvania, its successors and

assigns, and its subsidiaries, divisions, groups, affiliates, partnerships and joint ventures, and their directors, officers, managers, agents, and employees.

       C.     "Faiveley" means defendant Faiveley Transport S.A., a French corporation with its headquarters in Gennevilliers, France, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships and joint ventures, and their directors, officers, managers, agents, and employees. "Faiveley" includes defendant Faiveley Transport North America, a New York corporation headquartered in Greenville, South Carolina, a wholly-owned subsidiary of Faiveley Transport S.A.

       D.     "Amsted" means Amsted Rail Company, Inc., an Illinois corporation with its headquarters in Chicago, Illinois, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships and joint ventures, and their directors, officers, managers, agents, and employees. Amsted is a wholly-owned subsidiary of Amsted Industries Incorporated of Chicago, Illinois.

       E.     "Amsted Rail Faiveley LLC" means the ongoing business and all associated assets of a joint venture that currently exists between Faiveley and Amsted, was established in 2010 for the purpose of manufacturing and selling freight car brake components, and has headquarters located in Greenville, South Carolina.

       F.     "FTEN control valve" means the ongoing project and all associated assets of the freight car brake control valve for freight car brake systems developed or under development by Faiveley.

       G.     "Divestiture Assets" means:

           1.     Faiveley's full and complete interest, rights, and property in Amsted Rail Faiveley LLC and the FTEN control valve;

2.      All tangible assets relating to Amsted Rail Faiveley LLC and the FTEN control valve, including, but not limited to, research and development activities; all manufacturing equipment, tooling and fixed assets, including, at the option of the Acquirer, the braking simulation testing equipment known as the "whale" located at the Greenville, South Carolina, personal property, inventory, office furniture, materials, supplies, and other tangible property; all licenses, permits and authorizations issued by any governmental organization; all contracts, teaming arrangements, agreements, leases, commitments, certifications, and understandings, including supply agreements; all customer lists, contracts, accounts, and credit records; all repair and performance records and all other records; and

3.      All intangible assets relating to Amsted Rail Faiveley LLC and the FTEN control valve, including, but not limited to, all patents, licenses and sublicenses, intellectual property, copyrights, trademarks, trade names, service marks, and service names; technical information, computer software and related documentation, know-how, trade secrets, drawings, blueprints, designs, design protocols, and design tools and simulation capability; specifications for materials; specifications for parts and devices; safety procedures for the handling of materials and substances; quality assurance and control procedures; all manuals and technical information Faiveley provides to its own employees, customers, suppliers, agents or licensees; and all research data, including, but not limited to, designs of experiments, and the results of successful and unsuccessful designs and experiments.

## III. APPLICABILITY

A.      This Final Judgment applies to Wabtec and Faiveley, as defined above, and all other persons in active concert or participation with any of them who receive actual notice of this Final Judgment by personal service or otherwise.

B.      If, prior to complying with Section IV and V of this Final Judgment, defendants sell or otherwise dispose of all or substantially all of their assets or of lesser business units that include the Divestiture Assets, they shall require the purchaser to be bound by the provisions of this Final Judgment.  Defendants need not obtain such an agreement from the Acquirer of the assets divested pursuant to this Final Judgment.

## IV. DIVESTITURE

A.      Defendants are ordered and directed, within twenty (20) calendar days after the signing of the Hold Separate Stipulation and Order in this matter to divest the Divestiture Assets in a manner consistent with this Final Judgment to Amsted or an Acquirer acceptable to the United States, in its sole discretion.  The United States, in its sole discretion, may agree to one or more extensions of this time period not to exceed sixty (60) calendar days in total, and shall notify the Court in such circumstances.  Defendants agree to use their best efforts to divest the Divestiture Assets as expeditiously as possible.

B.      In the event defendants are attempting to divest the Divestiture Assets to an Acquirer other than Amsted, defendants promptly shall make known, by usual and customary means, the availability of the Divestiture Assets.  Defendants shall inform any person making an inquiry regarding a possible purchase of the Divestiture Assets that they are being divested pursuant to this Final Judgment and provide that person with a copy of this Final Judgment.

C.      In accomplishing the divestiture ordered by this Final Judgment, defendants shall offer to furnish to all prospective Acquirers, subject to customary confidentiality assurances, all information and documents relating to the Divestiture Assets customarily provided in a due diligence process except such information or documents subject to the attorney-client privileges

or work-product doctrine.  Defendants shall make available such information to the United States at the same time that such information is made available to any other person.

D.     Defendants shall provide the Acquirer and the United States information relating to Faiveley personnel with responsibilities for Amsted Rail Faiveley LLC or the FTEN control valve to enable the Acquirer to make offers of employment.  Defendants will not interfere with any negotiations by the Acquirer to employ any Faiveley employee whose primary responsibility is the production, development, and sale of products relating to Amsted Rail Faiveley LLC and the FTEN control valve.

E.     Defendants shall permit the Acquirer of the Divestiture Assets to have reasonable access to personnel and to make inspections of the physical facilities relating to the Divestiture Assets; access to any and all environmental, zoning, and other permit documents and information; and access to any and all financial, operational, or other documents and information customarily provided as part of a due diligence process.

F.     Defendants shall warrant to the Acquirer(s) that each asset will be operational on the date of sale.

G.     Defendants shall not take any action that will impede in any way the permitting, operation, or divestiture of the Divestiture Assets.

H.     Defendants shall warrant to the Acquirer that there are no material defects in the environmental, zoning or other permits pertaining to the operation of each asset, and that following the sale of the Divestiture Assets, defendants will not undertake, directly or indirectly, any challenges to the environmental, zoning, or other permits relating to the operation of the Divestiture Assets.

I.      Unless the United States otherwise consents in writing, the divestiture pursuant to Section IV, or by Divestiture Trustee appointed pursuant to Section V, of this Final Judgment, shall include the entire Divestiture Assets, and shall be accomplished in such a way as to satisfy the United States, in its sole discretion, that the Divestiture Assets can and will be used by the Acquirer as part of a viable, ongoing business in the design, development, manufacture, marketing, servicing, distribution, and sale of products relating to Amsted Rail Faiveley LLC and the FTEN control valve.  The divestiture, whether pursuant to Section IV or V of this Final Judgment, shall be made to an Acquirer that, in the United States's sole judgment, has the intent and capability (including the necessary managerial, operational, technical and financial capability) of competing effectively in the design, development, manufacture, marketing, servicing, distribution, and sale of products relating to Amsted Rail Faiveley LLC and the FTEN control valve; and that none of the terms of any agreement between the Acquirer and defendants give defendants the ability unreasonably to raise the Acquirer's costs, to lower the Acquirer's efficiency, or otherwise to interfere in the ability of the Acquirer to compete effectively.

## V. APPOINTMENT OF DIVESTITURE TRUSTEE

A.      If defendants have not divested the Divestiture Assets within the time period specified in Paragraph IV(A), defendants shall notify the United States of that fact in writing. Upon application of the United States, the Court shall appoint a Divestiture Trustee selected by the United States and approved by the Court to effect the divestiture of the Divestiture Assets.

B.      After the appointment of a Divestiture Trustee becomes effective, only the Divestiture Trustee shall have the right to sell the Divestiture Assets.  The Divestiture Trustee shall have the power and authority to accomplish the divestiture to an Acquirer acceptable to the United States at such price and on such terms as are then obtainable upon reasonable effort by

7

the Divestiture Trustee, subject to the provisions of Sections IV, V, and VI of this Final

Judgment, and shall have such other powers as this Court deems appropriate.  Subject to

Paragraph V(D) of this Final Judgment, the Divestiture Trustee may hire at the cost and expense

of defendants any investment bankers, attorneys, or other agents, who shall be solely accountable

to the Divestiture Trustee, reasonably necessary in the Divestiture Trustee's judgment to assist in

the divestiture.  Any such investment bankers, attorneys, or other agents shall serve on such

terms and conditions as the United States approves including confidentiality requirements and

conflict of interest certifications.

      C.     Defendants shall not object to a sale by the Divestiture Trustee on any ground

other than the Divestiture Trustee's malfeasance.  Any such objections by defendants must be

conveyed in writing to the United States and the Divestiture Trustee within ten (10) calendar

days after the Divestiture Trustee has provided the notice required under Section VI.

      D.     The Divestiture Trustee shall serve at the cost and expense of Wabtec pursuant to

a written agreement, on such terms and conditions as the United States approves, including

confidentiality requirements and conflict of interest certifications.  The Divestiture Trustee shall

account for all monies derived from the sale of the assets sold by the Divestiture Trustee and all

costs and expenses so incurred.  After approval by the Court of the Divestiture Trustee's

accounting, including fees for its services yet unpaid and those of any professionals and agents

retained by the Divestiture Trustee, all remaining money shall be paid to Wabtec and the trust

shall then be terminated.  The compensation of the Divestiture Trustee and any professionals and

agents retained by the Divestiture Trustee shall be reasonable in light of the value of the

Divestiture Assets and based on a fee arrangement providing the Divestiture Trustee with an

incentive based on the price and terms of the divestiture and the speed with which it is

accomplished, but timeliness is paramount.  If the Divestiture Trustee and Wabtec are unable to reach agreement on the Divestiture Trustee's or any agent's or consultant's compensation or other terms and conditions of engagement within fourteen (14) calendar days of appointment of the Divestiture Trustee, the United States may, in its sole discretion, take appropriate action, including making a recommendation to the Court.  The Divestiture Trustee shall, within three (3) business days of hiring any other professionals or agents, provide written notice of such hiring and the rate of compensation to defendants and the United States.

E.      Defendants shall use their best efforts to assist the Divestiture Trustee in accomplishing the required divestiture.  The Divestiture Trustee and any consultants, accountants, attorneys, and other agents retained by the Divestiture Trustee shall have full and complete access to the personnel, books, records, and facilities of the business to be divested, and defendants shall develop financial and other information relevant to such business as the Divestiture Trustee may reasonably request, subject to reasonable protection for trade secret or other confidential research, development, or commercial information or any applicable privileges.  Defendants shall take no action to interfere with or to impede the Divestiture Trustee's accomplishment of the divestiture.

F.      After its appointment, the Divestiture Trustee shall file monthly reports with the United States and, as appropriate, the Court setting forth the Divestiture Trustee's efforts to accomplish the divestiture ordered under this Final Judgment.  To the extent such reports contain information that the Divestiture Trustee deems confidential, such reports shall not be filed in the public docket of the Court.  Such reports shall include the name, address, and telephone number of each person who, during the preceding month, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about

acquiring, any interest in the Divestiture Assets, and shall describe in detail each contact with any such person.  The Divestiture Trustee shall maintain full records of all efforts made to divest the Divestiture Assets.

G.     If the Divestiture Trustee has not accomplished the divestiture ordered under this Final Judgment within six months after its appointment, the Divestiture Trustee shall promptly file with the Court a report setting forth (1) the Divestiture Trustee's efforts to accomplish the required divestiture, (2) the reasons, in the Divestiture Trustee's judgment, why the required divestiture has not been accomplished, and (3) the Divestiture Trustee's recommendations.  To the extent such reports contains information that the Divestiture Trustee deems confidential, such reports shall not be filed in the public docket of the Court.  The Divestiture Trustee shall at the same time furnish such report to the United States which shall have the right to make additional recommendations consistent with the purpose of the trust.  The Court thereafter shall enter such orders as it shall deem appropriate to carry out the purpose of the Final Judgment, which may, if necessary, include extending the trust and the term of the Divestiture Trustee's appointment by a period requested by the United States.

H.     If the United States determines that the Divestiture Trustee has ceased to act or failed to act diligently or in a reasonably cost-effective manner, it may recommend the Court appoint a substitute Divestiture Trustee.

## VI.  NOTICE OF PROPOSED DIVESTITURE

A.     Within two (2) business days following execution of a definitive divestiture agreement, defendants or the Divestiture Trustee, whichever is then responsible for effecting the divestiture required herein, shall notify the United States of any proposed divestiture required by Section IV or V of this Final Judgment.  If the Divestiture Trustee is responsible, it shall

similarly notify defendants.  The notice shall set forth the details of the proposed divestiture and list the name, address, and telephone number of each person not previously identified who offered or expressed an interest in or desire to acquire any ownership interest in the Divestiture Assets, together with full details of the same.

B.    Within fifteen (15) calendar days of receipt by the United States of such notice, the United States may request from defendants, the proposed Acquirer, any other third party, or the Divestiture Trustee, if applicable, additional information concerning the proposed divestiture, the proposed Acquirer, and any other potential Acquirer.  Defendants and the Divestiture Trustee shall furnish any additional information requested within fifteen (15) calendar days of the receipt of the request, unless the parties shall otherwise agree.

C.    Within thirty (30) calendar days after receipt of the notice or within twenty (20) calendar days after the United States has been provided the additional information requested from defendants, the proposed Acquirer, any third party, and the Divestiture Trustee, whichever is later, the United States shall provide written notice to defendants and the Divestiture Trustee, if there is one, stating whether or not it objects to the proposed divestiture.  If the United States provides written notice that it does not object, the divestiture may be consummated, subject only to defendants' limited right to object to the sale under Paragraph V(C) of this Final Judgment.  Absent written notice that the United States does not object to the proposed Acquirer or upon objection by the United States, a divestiture proposed under Section IV or V shall not be consummated.  Upon objection by defendants under Paragraph V(C), a divestiture proposed under Section V shall not be consummated unless approved by the Court.

11

## VII. FINANCING

Defendants shall not finance all or any part of any purchase made pursuant to Section IV or V of this Final Judgment.

## VIII. HOLD SEPARATE

Until the divestiture required by this Final Judgment has been accomplished, defendants shall take all steps necessary to comply with the Hold Separate Stipulation and Order entered by this Court.  Defendants shall take no action that would jeopardize the divestiture ordered by this Court.

## IX. AFFIDAVITS

A.      Within twenty (20) calendar days of the filing of the Complaint in this matter, and every thirty (30) calendar days thereafter until the divestiture has been completed under Section IV or V, defendants shall deliver to the United States an affidavit as to the fact and manner of its compliance with Section IV or V of this Final Judgment.  Each such affidavit shall include the name, address, and telephone number of each person who, during the preceding thirty (30) calendar days, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring, any interest in the Divestiture Assets, and shall describe in detail each contact with any such person during that period.  Each such affidavit shall also include a description of the efforts defendants have taken to solicit buyers for the Divestiture Assets, and to provide required information to prospective Acquirers, including the limitations, if any, on such information.  Assuming the information set forth in the affidavit is true and complete, any objection by the United States to information provided by defendants, including limitation on information, shall be made within fourteen (14) calendar days of receipt of such affidavit.

B.      Within twenty (20) calendar days of the filing of the Complaint in this matter,

defendants shall deliver to the United States an affidavit that describes in reasonable detail all

actions defendants have taken and all steps defendants have implemented on an ongoing basis to

comply with Section VIII of this Final Judgment.  Defendants shall deliver to the United States

an affidavit describing any changes to the efforts and actions outlined in defendants' earlier

affidavits filed pursuant to this section within fifteen (15) calendar days after the change is

implemented.

C.      Defendants shall keep all records of all efforts made to preserve and divest the

Divestiture Assets until one year after such divestiture has been completed.

## X. COMPLIANCE INSPECTION

A.      For the purposes of determining or securing compliance with this Final Judgment,

or of any related orders such as any Hold Separate Stipulation and Order, or of determining

whether the Final Judgment should be modified or vacated, and subject to any legally recognized

privilege, from time to time authorized representatives of the United States Department of

Justice, including consultants and other persons retained by the United States, shall, upon written

request of an authorized representative of the Assistant Attorney General in charge of the

Antitrust Division, and on reasonable notice to defendants, be permitted:

1.      access during defendants' office hours to inspect and copy, or at the option

of the United States, to require defendants to provide hard copy or

electronic copies of, all books, ledgers, accounts, records, data, and

documents in the possession, custody, or control of defendants, relating to

any matters contained in this Final Judgment; and

13

2.    to interview, either informally or on the record, defendants' officers, employees, or agents, who may have their individual counsel present, regarding such matters.  The interviews shall be subject to the reasonable convenience of the interviewee and without restraint or interference by defendants.

B.    Upon the written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division, defendants shall submit written reports or response to written interrogatories, under oath if requested, relating to any of the matters contained in this Final Judgment as may be requested.

C.    No information or documents obtained by the means provided in this section shall be divulged by the United States to any person other than an authorized representative of the executive branch of the United States, except in the course of legal proceedings to which the United States is a party (including grand jury proceedings), or for the purpose of securing compliance with this Final Judgment, or as otherwise required by law.

D.    If at the time information or documents are furnished by defendants to the United States, defendants represent and identify in writing the material in any such information or documents to which a claim of protection may be asserted under Rule 26(c)(1)(g) of the Federal Rules of Civil Procedure, and defendants mark each pertinent page of such material, "Subject to claim of protection under Rule 26(c)(1)(g) of the Federal Rules of Civil Procedure," then the United States shall give defendants ten (10) calendar days notice prior to divulging such material in any legal proceeding (other than a grand jury proceeding).

## XI. NOTIFICATION

A.     Unless such transaction is otherwise subject to the reporting and waiting period requirements of the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, 15 U.S.C. § 18a (the "HSR Act"), during the term of this Final Judgment, Wabtec, without providing advance notification to the Antitrust Division, shall not directly or indirectly acquire any assets of or any interest, including, but not limited to, any financial, security, loan, equity, or management interest, in any entity engaged in the design, development, production (including the provision of any input product comprising five percent or more of the value of any final product), marketing, servicing, distribution, or sale of freight car brake systems or components thereof in the United States.

B.     Such notification shall be provided to the Antitrust Division in the same format as, and per the instructions relating to the Notification and Report Form set forth in the Appendix to Part 803 of Title 16 of the Code of Federal Regulations as amended, except that the information requested in Items 5 through 9 of the instructions must be provided only about freight car brake systems or components thereof described in Section V of the Complaint filed in this matter (including any input product comprising five percent or more of the value of any final product).  Notification shall be provided at least thirty (30) calendar days prior to acquiring any such interest, and shall include, beyond what may be required by the applicable instructions, the names of the principal representatives of the parties to the agreement who negotiated the agreement, and any management or strategic plans discussing the proposed transaction.  If within the thirty-day period after notification, representatives of the Antitrust Division make a written request for additional information, Wabtec shall not consummate the proposed transaction or agreement until thirty (30) calendar days after submitting all such additional information.  Early

15

termination of the waiting periods in this paragraph may be requested and, where appropriate, granted in the same manner as is applicable under the requirements and provisions of the HSR Act and rules promulgated thereunder.  This Section shall be broadly construed and any ambiguity or uncertainty regarding the filing of notice under this Section shall be resolved in favor of filing notice.

## XII.  NO REACQUISITION

Wabtec may not reacquire any part of the Divestiture Assets during the term of this Final Judgment.

## XIII.  RETENTION OF JURISDICTION

This Court retains jurisdiction to enable any party to this Final Judgment to apply to this Court at any time for further orders and directions as may be necessary or appropriate to carry out or construe this Final Judgment, to modify any of its provisions, to enforce compliance, and to punish violations of its provisions.

## XIV.  EXPIRATION OF FINAL JUDGMENT

Unless this Court grants an extension, this Final Judgment shall expire ten years from the date of its entry.

## XV.  PUBLIC INTEREST DETERMINATION

Entry of this Final Judgment is in the public interest.  The parties have complied with the requirements of the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16, including making copies available to the public of this Final Judgment, the Competitive Impact Statement, and any comments thereon and the United States' responses to comments.  Based upon the record before the Court, which includes the Competitive Impact Statement and any comments and response to comments filed with the Court, entry of this Final Judgment is in the public interest.

Date: 4/10/2017

Court approval subject to procedures of Antitrust Procedures and Penalties Act, 15 U.S.C. § 16

United States District Judge